UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENA DUCES TECUM directed to non-party Nikola Corporation in connection with<br><br>*USA v. Trevor Milton*, S.D.N.Y., Case No. 1:21-cr-00478-ER | Misc. Case No. 1:22-mc-204<br><br>ECF Case |

# MEMORANDUM OF LAW IN SUPPORT OF NIKOLA CORPORATION'S <u>MOTION TO QUASH</u>

Dated: July 29, 2022

KIRKLAND & ELLIS LLP
Jacquelyn M. Kasulis
Robert W. Allen, P.C.
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jacquelyn.kasulis@kirkland.com
bob.allen@kirkland.com

*Attorneys for Nikola Corporation*

# TABLE OF CONTENTS

                                                                         **Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 1

APPLICABLE LAW .................................................................................................................... 5

DISCUSSION ............................................................................................................................... 7

       I.       The Subpoena Does Not Seek Specifically Identified Evidence ............................ 7

       II.      The Subpoena Does Not Seek Relevant, Admissible Evidence ........................... 10

       III.     There Is No Legal Basis for Milton's Inspection Requests ................................... 13

       IV.     Compliance with the Subpoena Would Be Unduly Burdensome ......................... 14

CONCLUSION ........................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bowman Dairy Co. v. United States*,
   341 U.S. 214 (1951) ................................................................................................5, 10

*United States v. Barnes*,
   2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ................................................................ *passim*

*United States v. Bergstein*,
   2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) ..................................................................9, 10

*United States v. Binday*,
   908 F. Supp. 2d 485 (S.D.N.Y. 2012) ...............................................................................12

*United States v. Boyle*,
   2009 WL 484436 (S.D.N.Y. Feb. 24, 2009) .....................................................................12

*United States v. Brown*,
   1995 WL 387698 (S.D.N.Y. June 30, 1995) ....................................................................11

*United States v. Carroll*,
   2020 WL 104813 (S.D.N.Y. Jan. 9, 2020) .........................................................................8

*United States v. Carton*,
   2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) ....................................................1, 6, 11, 12

*United States v. Chen De Yian*,
   1995 WL 614563 (S.D.N.Y. Oct. 19, 1995) .....................................................................12

*United States v. Cherry*,
   876 F. Supp. 547 (S.D.N.Y. 1995) .......................................................................5, 7, 10, 12

*United States v. Cognetta*,
   2019 WL 4198544 (S.D.N.Y. Aug. 13, 2019) ..................................................................14

*United States* v. *Cuthbertson*,
   630 F.2d 139 (3d Cir. 1980) ................................................................................................7

*United States v. Donziger*,
   2021 WL 1865376 (S.D.N.Y. May 10, 2021) ..................................................................11

*United States v. Gross*,
   24 F.R.D. 138 (S.D.N.Y. 1959) ........................................................................................10

*United States v. Jabar*,
  2016 WL 8671207 (W.D.N.Y. July 22, 2016) ................................................................ 8

*United States v. Kaufman*,
  2014 WL 2048198 (S.D.N.Y. May 19, 2014) ............................................................... 6

*United States v. Leonard*,
  817 F. Supp. 286 (E.D.N.Y. 1992) ............................................................................... 9

*United States v. Louis*,
  2005 WL 180885 (S.D.N.Y. Jan. 27, 2005) ................................................................. 8

*United States v. Mendinueta-Ibarro*,
  956 F. Supp. 2d 511 (S.D.N.Y. 2013) .......................................................................... 8

*United States v. Moore*,
  1992 WL 266938 (E.D.N.Y. Sept. 29, 1992) ............................................................... 9

*United States v. Nixon*,
  418 U.S. 683 (1974) ............................................................................................ *passim*

*United States v. Pena*,
  2016 WL 8735699 (S.D.N.Y. Feb. 12, 2016) .......................................................... 8, 11

*United States v. Sawinski*,
  2000 WL 1702032 (S.D.N.Y. Nov. 14, 2000) ............................................................. 7

*United States v. Shah*,
  2022 WL 1284550 (S.D.N.Y. Apr. 29, 2022) .......................................................... 8, 10

*United States v. Skelos*,
  2018 WL 2254538 (S.D.N.Y. May 17, 2018) ........................................................ 5, 6, 8

*United States v. Tagliaferro*,
  2021 WL 980004 (S.D.N.Y. Mar. 16, 2021) ................................................................ 8

*United States v. Vasquez*,
  258 F.R.D. 68 (E.D.N.Y. 2009) .................................................................................. 11

*United States v. Weissman*,
  2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) ....................................................... 11, 12

*United States v. Yudong Zhu*,
  2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014) ............................................................. 11

**Rules**

Fed. R. Crim. P. 16(a)(1)(E) ................................................................................................ 13

Fed. R. Crim. P. 17(c) ............................................................................................................... *passim*

Fed. R. Crim. P. 17(g) ...................................................................................................................... 5

Fed. R. Crim. P. 17(h) ................................................................................................................ 7, 11

**PRELIMINARY STATEMENT**

Defendant Trevor Milton ("Milton") has been charged with securities fraud and is scheduled to proceed to trial on September 12, 2022. On June 27, 2022, Milton served a Rule 17(c) subpoena on Nikola Corporation ("Nikola" or the "Company"). The subpoena makes numerous requests for "all" documents and communications on a host of issues, without any regard to the millions of pages of documents that Nikola has already produced to Milton in this matter, either directly or through the Government. These requests are plainly improper under *United States v. Nixon*, 418 U.S. 683 (1974), in which the Supreme Court held that Rule 17(c) subpoenas can only seek relevant, admissible, and specific evidence—in other words, identified evidence that the defendant intends and is able to introduce as exhibits at trial. Milton's subpoena plainly fails to satisfy this "strict standard." *United States v. Carton*, 2018 WL 5818107, at *1 (S.D.N.Y. Oct. 19, 2018).[1] Indeed, to say that the subpoena is overbroad is an understatement: the Subpoena has 38 different requests, 34 of which seek "all" documents, communications, or materials on various issues; the first two of those requests have 45 different subparts; and many of the requests have no meaningful time limitations whatsoever. These requests are thus exactly the type of fishing expedition that *Nixon* prohibits. The Court should quash Milton's subpoena.

**BACKGROUND**

Nikola conducted an internal investigation in late 2020 and concluded that Milton had made certain misstatements regarding the Company's products and technology. (*See* Nikola Corp. Form 10-K, dated February 25, 2021, at 147 (describing statements that were "inaccurate in whole or in part, when made")). The U.S. Department of Justice ("DOJ") and the Securities Exchange

---

[1] Internal quotation marks and citations are omitted unless otherwise noted.

Commission ("SEC") had initiated related investigations, and the DOJ ultimately filed charges in this matter in July 2021.

Nikola has made extensive documentary productions to both Milton and the Government during these investigations. Pursuant to a separation agreement, Nikola provided Milton with *every email he sent or received* on Nikola accounts from May 2015 through the date of his separation, as well as other documentary materials. Specifically, Nikola produced every email from any custodian containing Milton's email or name in the "To," "From," "CC," or "BCC" fields from May 29, 2015 through his separation; the entire contents of Milton's Google Drive; a forensic image of Milton's phone; forensic images of Milton's three computers; and documentary materials from investor data rooms that Milton requested.

In addition to its productions to Milton, Nikola also made voluminous productions to the DOJ and the SEC. In response to subpoenas that it received from the DOJ and the SEC in September 2020, Nikola collected documents from 58 custodians, reviewed those documents, and ultimately produced approximately *two million pages* of documents to the Government. These productions responded to requests for the following materials, among other things:

- Records of communications with actual or prospective investors;
- Records relating to the design, building, production, and marketing of Nikola's semi-trucks and the Nikola Badger;
- Records relating to the Nikola One unveiling on December 1, 2016;
- Records relating to the "In Motion" video;
- Records relating to the development of high-density battery technology, inverters, and hydrogen fuel stations;
- Records relating to Nikola's production of hydrogen, including the cost of hydrogen;
- Records concerning Nikola's initial public offering;
- Records concerning meetings of Nikola's Board of Directors and Audit Committee.

2

(*See* July 29, 2022 Decl. of Robert W. Allen, P.C. ("Allen Decl.") ¶ 6.)  These requests, moreover, are only some of the many that Nikola received from the DOJ and the SEC and to which Nikola responded.  (*Id.*)

Critically, Nikola understands that the Government provided the entirety of Nikola's production to Milton as Rule 16 discovery.  Milton has accordingly received not only all of his own emails and devices, but also approximately two million pages of materials produced to the Government that relate to the issues at the heart of this case.

Despite having received literally millions of pages of documents and information from Nikola and from the Government, Milton served a subpoena on Nikola on June 27, 2022 (the "Subpoena").  (*See* Ex. A.)[2]  The Subpoena contains *38 requests*, several of which have dozens of subparts.  It makes no effort whatsoever to eliminate requests for materials that Milton would have already received by virtue of Nikola's productions to him and the Government, aside from a caveat that the Subpoena seeks documents "that have not already been produced directly to the [DOJ]." (*Id.* at 5.)  And it is incredibly broad.  Indeed, almost every request is for "[a]ll documents" or "[a]ll communications" regarding different subjects.  The very first request, for example, is for "[a]ll documents" that relate in any way to 20 different media appearances that Milton made.  (*Id.* at 5-6 (Request 1(a)-(t)).)  The second request is for "[a]ll documents" related to 25 different social media statements.  (*Id.* at 6-10 (Request 2(a) - (y)).)  The third request seeks "[a]ll documents concerning testing [or] simulations" of the Nikola One and the Nikola Badger.  (*Id.* at 10-11)  Other requests seek, without any meaningful limitations, "[a]ll communications" with different partners or vendors like Italdesign, a design firm, and Technosports, an engineering firm.  (*Id.* at 11

---

[2]  All exhibits are attached to the July 29, 2022 Declaration of Robert W. Allen, P.C., which is being submitted contemporaneously with this memorandum.

(Requests 7 and 8).) Yet other requests seek entire personnel files for certain employees. (*Id.* at 12, 16 (Requests 16 and 36).).

The Subpoena also includes requests for "all" documents regarding Nikola's interactions with the Government. For example, Request 28 asks for all "correspondence . . . relating to Trevor Milton" between Nikola and the Government. (*Id.* at 15.) Request 29 asks for "[a]ll notes and talking points concerning any discussion, presentation, meeting, virtual meeting, or telephone conference with [the Government] . . . relating to Trevor Milton." (*Id.*) Request 30 asks for "[a]ll data provided to any government entity," and Request 31 asks for "[a]ll notes and talking points relating to any presentation, oral recitation or discussion of any interview Kirkland conducted." (*Id.*)

Finally, some of the requests in the Subpoena are not even requests "to produce any books, papers, documents, data, or other objects" under Rule 17(c)(1) at all. Requests 37 and 38 ask to "inspect, photograph, and videotape . . . the Nikola One, the Nikola Two, the Badger, the Reckless, and any other off-road and watersports prototypes"—including their "internal components"—as well as the Company's hydrogen station. The Subpoena does not provide any details regarding this purported inspection.

On July 11, 2022, Nikola sent Milton a letter objecting to the Subpoena on multiple grounds, including that its requests did not remotely satisfy *Nixon*'s requirement that Rule 17(c) subpoenas seek only admissible, specific, and relevant evidence and that there was no legal basis to use a Rule 17(c) subpoena to "inspect, photograph, and videotape" a third party's property or premises. (*See* Ex. B at 1.) Despite those objections, Nikola offered to meet and confer on Milton's requests so that the parties could discuss ways in which the requests could be limited so that they would become compliant with *Nixon*. (*Id.* at 2.)

Milton did not accept Nikola's offer to meet and confer on his requests, and, indeed, did not even respond to Nikola's letter for 10 days. On July 22nd, however, Milton, through counsel, sent a letter to Nikola that demanded immediate compliance with the Subpoena in light of the "impending trial date" and asserted that the Court had already "determined [Nikola's] legal objections to the Subpoena to be without merit." (*See* Ex. C at 1.) The letter then threatened to move for sanctions. (*See id.* at 2 (stating that Milton "intend[ed] to move the Court for relief, including under Federal Rule of Criminal Procedure 17(g)").)

## APPLICABLE LAW

Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoenas in criminal cases and provides, in relevant part:

> (1) *In General.* A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> (2) *Quashing or Modifying the Subpoena.* On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Rule 17(c) "was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Skelos*, 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (noting that Rule 17(c) subpoenas are not intended to be used "as a discovery device, but instead should be used only as a mechanism for obtaining specific admissible evidence"). "Because of this, '[c]ourts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16.'" *United States v. Barnes*, 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008) (quoting *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995)).

5

For these reasons, "Rule 17 subpoenas are held to a strict standard." *United States v. Carton*, 2018 WL 5818107, at *1 (S.D.N.Y. Oct. 19, 2018). Under *Nixon*, parties seeking a Rule 17(c) subpoena must make four showings:

> (1) that the documents are evidentiary and relevant;
>
> (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;
>
> (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and
>
> (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699-700.

To show that the documents are "evidentiary and relevant," *Nixon* held that the party requesting the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. "This test is the hallmark of Rule 17(c)(2) analysis, and courts in this jurisdiction and elsewhere have repeatedly and consistently applied it to determine whether third-party subpoenas served by defendants must be quashed as unreasonable or oppressive." *Barnes*, 2008 WL 9359654, at *2; *see also Skelos*, 2018 WL 2254538, at *1 ("[C]ourts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties."). Under this test, "[t]he defendant has the burden of specifically identifying the materials sought, and showing that they are relevant and admissible." *Barnes*, 2008 WL 9359654, at *3.

Importantly, "Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial." *Skelos*, 2018 WL 2254538, at *2. Thus, "[i]t is well established . . . that Rule 17(c) does not provide a basis for pre-trial 'production of materials whose evidentiary use is limited to impeachment.'" *Carton*, 2018 WL 5818107, at *1 (quoting *United States v. Kaufman*, 2014 WL 2048198, at *12-

6

13 (S.D.N.Y. May 19, 2014); *see also Cherry*, 876 F. Supp. at 553 ("[T]he admissibility standard of Rule 17(c) . . . preclude[s] production of materials whose evidentiary use is limited to impeachment."); *Barnes*, 2008 WL 9359654, at *3 ("The items sought [by a Rule 17(c) subpoena] cannot merely be potentially relevant.").

Finally, Federal Rule of Criminal Procedure 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule." Instead, the production of materials constituting witness statements is governed by Rule 26.2.

## DISCUSSION

**I.     THE SUBPOENA DOES NOT SEEK SPECIFICALLY IDENTIFIED EVIDENCE.**

As an initial matter, the Subpoena should be quashed because it does not seek specifically identified materials. "In order to satisfy the specificity requirement of Nixon, the party seeking production of the materials must 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hope [] that something useful will turn up." *Barnes*, 2008 WL 9359654, at *4 (quoting *United States v. Sawinski*, 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000)). In other words, the subpoena must "constitute[] a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *United States* v. *Cuthbertson,* 630 F.2d 139, 144 (3d Cir. 1980).

Milton cannot meet this burden for the straightforward reason that the Subpoena seeks wide swaths of evidence with no regard to what he already has. Indeed, 34 of the Subpoena's 38 total requests ask for "*all*" (or "any") documents or communications relating to numerous subjects. (*See* Ex. A (emphasis added).) These types of overbroad requests are plainly improper: "[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'" and "indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence." *Barnes*, 2008 WL 9359654, at *4.

Courts in this Circuit routinely quash subpoenas that "blindly seek[] 'all' documents" like this one. *Id.*; *see also United States v. Shah*, 2022 WL 1284550, at *2 (S.D.N.Y. Apr. 29, 2022) ("The request for 'all' such documents and communications without a whiff of specificity as to why she requires them is nothing more than an impermissible 'fishing expedition.'"); *United States v. Tagliaferro*, 2021 WL 980004, at *3 (S.D.N.Y. Mar. 16, 2021) ("The terms employed here— 'any,' 'all,' and 'whatever'—do not evince specificity."); *United States v. Avenatti*, 2020 WL 508682, at *5 (S.D.N.Y. Jan. 31, 2020) ("In seeking all communications that reference Avenatti over a nine-month period following Avenatti's March 25, 2019 arrest, the Defendant sweeps too broadly."); *United States v. Carroll*, 2020 WL 104813, at *2 (S.D.N.Y. Jan. 9, 2020) (finding subpoena asking for "every email" to be "wildly overbroad"); *Skelos*, 2018 WL 2254538, at *4 ("Defendants' request here for *all* documents produced as part of a state agency's investigation into a non-party is insufficiently focused." (emphasis in original)); *United States v. Pena*, 2016 WL 8735699, at *3 (S.D.N.Y. Feb. 12, 2016) (holding the requesting party failed to meet the *Nixon* specificity requirement because the "request for 'any and all' records associated with the Government's cooperating witnesses for an indefinite length of time takes an impermissible shotgun approach to Rule 17(c)"); *United States v. Jabar*, 2016 WL 8671207, at *4 (W.D.N.Y. July 22, 2016) ("On the other hand, when, as here, the defendant asks for 'any' and 'all' documents, and otherwise describes the subpoenaed materials in general terms, the defendant likely is using the subpoena to fish for discovery."); *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("Subpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*."); *United States v. Louis*, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (quashing a subpoena because it "seeks 'any and all' documents relating to several

categories of subject matter (some of them quite large), rather than specific evidentiary items"); *United States v. Moore*, 1992 WL 266938, at *1 (E.D.N.Y. Sept. 29, 1992) (quashing a subpoena that requested "all documents, memoranda, notes, reports and other materials" because of its overbreadth); *United States v. Leonard*, 817 F. Supp. 286, 295 (E.D.N.Y. 1992) (finding that a subpoena seeking "virtually every [Drug Enforcement Agency] document relating to" the defendant was insufficiently specific under *Nixon*).

There are no circumstances here that would justify ignoring the consensus of cases on this subject. To the contrary, there are further reasons to believe that the Subpoena is nothing more than an improper fishing expedition.

First, Milton makes no effort whatsoever to tailor the Subpoena to specific pieces of evidence that Milton believes were omitted from those productions. Indeed, many of Milton's requests are *virtually identical* to the Government's requests. The DOJ's subpoena, for example, required the production of all records relating to the "design, building, [] production, and marketing" of the Badger. (*See* Allen Decl. ¶ 6.) Milton similarly asks for "[a]ll documents concerning testing and simulations" for the Badger (Request 4), as well as "all communications" with the design and engineering firms Nikola hired to assist with building prototype Badgers (Requests 7, 8). (*See* Ex. A at 11.) These requests and others would be fully encompassed by the DOJ's request, which requires that the Subpoena be quashed. "*Nixon*'s specificity requirement does not permit a defendant to force a non-party by subpoena to replicate all or part of the government's discovery productions in the hope that the non-party's production will produce something more." *United States v. Bergstein*, 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017). To the extent Milton thinks "the subpoenaed material may not be exactly the same as what the

9

government sought," that "further runs afoul of *Nixon* by suggesting that the Subpoena[] [is] part of a 'fishing expedition' for unspecified materials." *Id.*

Second, the first two requests in the Subpoena—which collectively have *45 subparts* relating to Milton's public statements—are the *exact same* as two requests that Milton made in another subpoena issued to a public relations firm retained by Nikola. (*See* Allen Decl. ¶ 5.) "The fact that [Milton] sent identical subpoenas to several [witnesses] . . . strengthens the inference that [he] is using the subpoena in 'hopes that something useful will turn up.'" *Shah*, 2022 WL 1284550, at \*2.

At bottom, Rule 17(c) subpoenas are meant to reach specific pieces of "identified evidence" that can be admitted at trial. *Barnes*, 2008 WL 9359654, at \*4. They are not meant to be civil-like discovery devices and cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case." *Cherry*, 876 F. Supp. at 553 (quoting *United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959)); *Bowman Dairy Co.*, 341 U.S. at 220 (holding that Rule 17(c) "was not intended to provide an additional means of discovery"). Yet that is exactly what the Subpoena does. The Subpoena would be litigated as unduly burdensome and oppressive if it were a request for production in a civil case. It is plainly improper in the context of this criminal matter.

II. **THE SUBPOENA DOES NOT SEEK RELEVANT, ADMISSIBLE EVIDENCE.**

The Subpoena should also be quashed because it cannot satisfy *Nixon*'s relevance and admissibility requirements. *See Barnes*, 2008 WL 9359654, at \*3 ("The items sought cannot merely be *potentially* relevant or admissible." (emphasis added)); *Cherry*, 876 F. Supp. at 552 ("The weight of authority holds that in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence."). The Subpoena, however, is replete with requests for irrelevant and inadmissible evidence. For example:

- ***Interview Notes.***  The Subpoena seeks notes relating to "any interview Kirkland conducted" in its capacity as Nikola's counsel. (*See* Ex. A at 15 (Request 31) ("All notes and talking points relating to any presentation, oral recitation or discussion of any interview Kirkland conducted, or any report to EY concerning the allegations made by the SDNY or SEC against Mr. Milton.").  Setting aside privilege concerns,[3] these types of materials are obviously hearsay and cannot be introduced at trial. *United States v. Weissman*, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (quashing subpoena for "documents evidencing statements by and interviews of" certain witnesses); *United States v. Brown*, 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995) (noting that interview "memoranda would, of course, be hearsay, and inadmissible as evidence at trial").[4]

- ***Government Communications.***  The Subpoena seeks documents relating to Nikola's meetings with the Governments. (*See* Ex. A at 15 (Request 29) ("All notes and talking points concerning any discussion, presentation, meeting, virtual meeting, or telephone conference with the SEC, SDNY, NYDA and/or USPIS concerning Trevor Milton from September 10, 2020 through present relating to Trevor Milton.").)  Nikola's communications to the Government, however, are again hearsay and, in any event, have nothing to do with Milton's guilt or innocence. Neither Nikola nor the Government is on trial. *See, e.g.*, *Carton*, 2018 WL 5818107, at *6 (quashing subpoena for "communications between a lawyer at [a law firm] and the Government" because such records "are plainly irrelevant and inadmissible as hearsay"); *United States v. Donziger*,

---

[3]  The Subpoena requests, in Request 31 and elsewhere, certain materials that may be subject to an attorney-client or work product privilege.  This is improper. *See United States v. Pena*, 2016 WL 8735699, at *2 (holding that defendant had "failed to make the required showing under Nixon" of admissibility in part because "some portion of the recordings and emails are likely inadmissible because they are privileged").  Nikola, however, understands that the Subpoena does not require the production of any materials that Nikola deems privileged.

[4]  The Subpoena's request for notes of interviews, moreover, should also be quashed for the separate and independent reason that it seeks witness statements, which violates Federal Rule of Criminal Procedure 17(h).  That Rule provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under [Rule 17]."  Under the plain language of that provision, Milton's request is improper and should be quashed. *See, e.g.*, *Carton*, 2018 WL 5818107, at *4 (quashing request for personnel file in light of Rule 17(h) because the file related to "a prospective witness in this case" and "the Government will provide [the defendant] with his [18 U.S.C. §] 3500, Jencks and Giglio material by the deadline set by the Court, if indeed, it decides to call him to the stand"); *United States v. Yudong Zhu*, 2014 WL 5366107, at *3 (S.D.N.Y. Oct. 14, 2014) ("[E]vidence consisting of correspondence discussing Zhu's tenure likely constitute 'statement[s] of a witness or of a prospective witness' that Rule 17(h) mandates are 'not subject to subpoena.'"); *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009) (granting motion to quash under Rule 17(h) where defendant subpoenaed witness statements in the possession of a third party).

11

2021 WL 1865376, at *7 (S.D.N.Y. May 10, 2021) (finding that documents between a non-party law firm and the court "appear to be classic hearsay").

- **Communications About Milton.** Certain of the Subpoena's requests seek communications from other employees "about Trevor Milton" or "concerning any public statements made by Mr. Milton." (*See, e.g.*, Ex. A at 12 (Request 14) ("All communications with reporters or journalists about Trevor Milton . . . ."); *id.* at 17 (Request 33) ("All communications" involving Nikola's board members or certain other executives "relating to or concerning any public statement made by Mr. Milton between November 2019 and September 21, 2020."); *id.* (Request 35) ("All communications by, among or between [a third party] and any Nikola employee concerning Trevor Milton . . . .").) These documents, however, are all plainly irrelevant and cannot be admitted at trial: what other employees thought about Milton or his statements presumably does not matter. And while Milton may want these materials to impeach witnesses at trial, "[i]t is well established . . . that Rule 17(c) does not provide a basis for pre-trial production of materials whose evidentiary use is limited to impeachment." *Carton*, 2018 WL 5818107, at 1; *see also Avenatti*, 2020 WL 86768, at *6 ("[T]he admissibility standard under Rule 17(c) does not extend to impeachment material."); *United States v. Binday*, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012) ("[A] proposed subpoena does not satisfy the *Nixon* three-pronged test if it seeks material that could be used at trial only to impeach a witness."); *Weissman*, 2002 WL 31875410, at *1 (noting the "absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes"); *Cherry*, 876 F. Supp. at 553 ("[T]he admissibility standard of Rule 17(c) . . . precludes production of materials whose evidentiary use is limited to impeachment.").

- **Personnel Files.** The Subpoena requests personnel files for certain employees. (*See* Ex. A at 12 (Request 16) (requesting "personnel file" of former CFO); *id.* at 16 (Request 36) (requesting "personnel file" of former employee").) Again, a personnel file might have impeachment evidence, but Rule 17(c) does not allow subpoenas to be issued for impeachment purposes only.

Even requests for documents related to Nikola's vehicles should be quashed, since those requests are so broadly designed that they would require the production of wide swaths of irrelevant and inadmissible materials. *See, e.g.*, *United States v. Boyle*, 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) (quashing subpoena for investigative file as overbroad because, although part of the investigative file "may be relevant to the case at bar," the "the bulk of materials sought by defendant would be inadmissible"); *United States v. Chen De Yian*, 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (quashing Rule 17(c) subpoena because "it called for the production of the entire investigative file and is accurately described as a fishing expedition").

12

### III.     THERE IS NO LEGAL BASIS FOR MILTON'S INSPECTION REQUESTS.

The Subpoena's final two requests demand "[a]ccess to inspect, photograph, and videotape" certain Nikola "prototypes and their internal components" and areas of Nikola's headquarters.  (*See* Ex. A at 16-17 (Requests 37 and 38).)  These requests are improper and should be quashed.

To begin, there is no lawful basis by which a Rule 17(c) subpoena can require a third party to allow a defendant to inspect and photograph property, let alone manipulate that property so that unspecified "internal components" may be photographed or videotaped.  Rule 17(c) authorizes subpoenas that order the production of "books, papers, documents, data, or other objects the subpoena designates."  Fed. R. Crim. P. 17(c)(1).  It says nothing about allowing the inspection of a third party's property.  This omission is telling, moreover, in light of the fact that Rule 16 *does address inspection.*  Rule 16 is entitled "Discovery and Inspection" and has different provisions that require the Government to, among other things, "permit the defendant to inspect and to copy or photograph . . . tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control" and other conditions are satisfied.  Fed. R. Crim. P. 16(a)(1)(E).  The Federal Rules of Criminal Procedure could have included similar inspection rights in both Rule 16 and 17; the omission of such a right from Rule 17 suggests that it was never intended and should not be allowed.

In its July 11, 2022 letter, moreover, Nikola asked Milton to provide any legal authority providing that Rule 17 subpoenas could be used for inspections.  (*See* Ex. B at 1-2.)  Milton, however, failed to do so in his subsequent letter.  (*See generally* Ex. C.)

In addition to the lack of any legal basis, Milton's inspection requests should be denied because Milton already has related materials.  Photographs of the relevant vehicles and locations are included in Nikola's different productions and are publicly available.  Beyond that,

13

photographs of the prototypes or location that were taken today would not be relevant, since the operative issues at trial presumably relate to the status of the relevant prototypes in 2020 and earlier, when Milton is alleged to have made the misstatements at issue.

### IV. COMPLIANCE WITH THE SUBPOENA WOULD BE UNDULY BURDENSOME.

Finally, the Court should quash the Subpoena because complying with it would be unduly burdensome. As already discussed, there are 38 requests, the first two of which have 45 subparts. Nearly every request is for "all" documents or communications on some issue. Complying with the Subpoena would accordingly require extensive forensic review at great cost to Nikola. Rule 17(c) provides that "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive," which, as courts have noted, "imposes a reasonableness standard." *United States v. Cognetta*, 2019 WL 4198544, at *4 (S.D.N.Y. Aug. 13, 2019). Milton's requests obviously fail that standard, especially when considered in light of the fact that Nikola has already made extensive productions to both Milton and the Government (which produced the materials to Milton) that relate to the subject matter of the great majority of the requests in the Subpoena.

### CONCLUSION

For the aforementioned reasons, Nikola respectfully submits that the Court should grant its motion to quash the Subpoena.

| | |
|---|---|
| Dated: New York, New York<br>July 29, 2022 | Kirkland & Ellis LLP<br><br>*/s/ Robert W. Allen*<br>Robert W. Allen, P.C.<br>Jacquelyn M. Kasulis<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>bob.allen@kirkland.com<br>jacquelyn.kasulis@kirkland.com<br><br>*Attorneys for Nikola Corporation* |